# John Stewart, Plff. in Err., v. City of Philadelphia, To Use, etc.

Municipal claims for paving and curbing in Philadelphia are to be estimated according to frontage, except in the case of rural or suburban land.

Prima facie all land within the city limits is subject to the frontage rule, and the burden of proving land rural rests upon the owner.

NOTE.— For the application of the foot-front rule of assessment to city property, see note to Philadelphia v. Keith, 1 Sad. Rep. 359.

Rural land is land not already so far improved or in the midst of or in such close proximity to city improvements that it can fairly be said that paving and curbing are requisite for the benefit of the land as a part of the city proper.

Municipal assessment of land as rural for the purpose of taxation does not estop the city from denying its rural character in a claim for paving and curbing.

(Decided October 4, 1886.)

Error to Common Pleas, No. 4, of Philadelphia County to review a judgment on a verdict for the plaintiff in scire facias sur municipal claim. Affirmed, by a divided court.

This was a claim by the city of Philadelphia to the use of Cunningham & McNichol, against John Stewart, owner or reputed owner, or whoever may be owner of a lot of ground at the northwest corner of Forty-Eighth street and Silverton avenue, in the twenty-fourth ward of the city, containing 150 feet in front on Forty-Eighth street, and 100 feet in depth along the north side of Silverton avenue.

The claim was filed November 20, 1878, and was for work done and materials furnished by the use plaintiffs in curbing and paving Forty-Eighth street, in front of the premises.

On November 20, 1882, a scire facias issued. The defendant pleaded *non assumpsit,* set-off, and payment with leave, etc., and especially that the work was charged for according to the frontage rule of assessment "and that the ground, etc., against which said claim has been filed, is, and was at the time of doing said work, rural and suburban, and assessed as such; and further because said paving and curbing were not called for by any reason save as a general public improvement and conferred no special benefit on defendant's property."

On this plea issue was joined.

At the trial, before WILLSON, J., the following facts appeared:

There were no buildings or improvements of any kind on said lot; Forty-Eighth street in 1878 was opened only from Haverford avenue northward to Westminster avenue, a distance of 4 squares. The paving claimed for was started at Haverford

avenue and carried to Aspen street, 150 feet north of defendant's lot, in all a distance of 2 squares. No streets were opened on the east side of Forty-Eighth street north from Haverford avenue.

An open common, through which a creek 30 feet wide ran, faced the east side of Forty-Eighth street directly opposite defendant's lot, and extended eastward to Forty-Sixth street; and extended this width a mile northward from Haverford avenue; said tract lying between defendant's lot and the improved part of the city.

There were no houses on either side of Forty-Eighth street north of Silverton avenue excepting one at the northwest corner of Forty-Eighth and Aspen streets and three small brick houses built in 1878. Three hundred feet south of defendant's land, at the south end of Forty-Eighth street, were the insane asylum grounds, containing 119 acres. To the westward of defendant's lot, at Fiftieth street, was open country used for farming purposes only, there being in the intervening space on the north side of Silverton avenue two houses between Forty-Eighth and Forty-Ninth streets and only one house between Forty-Ninth and Fiftieth streets where the farms begin.

The open tract on the east side of Forty-Eighth street north from Haverford avenue, which was on the other side of the street from defendant's lot, was assessed in large blocks. Morse's estate had a frontage on Forty-Eighth street of 415 feet and extended in depth a square to Forty-Seventh street; then came McInne's lot, 360 feet front on Forty-Eighth street, of same depth below grade; adjoining this to the north was a lot with a 364 feet frontage on Forty-Eighth street.

Silverton avenue was not open east of Forty-Eighth street. It was opened west only two squares to Fiftieth street onto farming land.

The general character of the place (to use the language of the city assessor) was that of "an isolated neighborhood cut off from the railroads." There were no compact buildings there.

Forty-Eighth street was out of the line of travel and was not used at all by the general public. Defendant's land and also that surrounding was assessed as rural up to the year 1885, seven years after this paving was laid.

The defendant asked the court to charge as follows:

"First. If the jury is satisfied from the evidence in the case that the land against which this claim is filed was in 1878 rural or suburban, it is its duty to find for the defendant."

"*Answer.* I affirm this point; adding, however, that [the real test is not whether the property in question could properly be called either rural or suburban, but whether the work done was required or justified by the locality of the property and the character or the surrounding improvements] ; in other words, if the locality and character of the property and its surroundings were such that the work done would not properly be considered to have been done for the general public advantage but to have been done for the special benefit of that neighborhood of the city in which the property in question was situated and for the advantage of such property as city lots, then the property should under the law be charged with its share of the expense, and the plaintiff is entitled to a verdict."

"Second. If the jury find that the land against which the lien is filed was at the time of filing the lien beyond the built up section of the city, that land in the immediate vicinity was used for farming purposes, and that Forty-Eighth street was not cut through, then said lot was protected from such a tax as is levied by this lien and the verdict must be for the defendant."

"*Answer.* I do not affirm this point as stated. [I do not regard the near proximity of farm land or the fact that Forty-Eighth street was not cut through, which is a very indefinite expression, to be of themselves of conclusive importance.] Farm land might be in the immediate vicinity of a closely built city. Such proximity would undoubtedly be an element to be taken into consideration in connection with all the evidence adduced to show that the property in question was rural in the sense to which I have called your attention in my answer to the last point. So, also, would be the incident of being beyond the built up portion of the city. If by this is meant that the property against which the claim is filed was so far separated from the building improvements of the city that the work covered by the claim did not bring to the property the special benefit which such work would ordinarily bring to city lots as such, then the claim should not and cannot be enforced against the property."

"Third. If the jury believe that the paving, the subject of this suit, was not called for by any reason save as a general public improvement and conferred no special benefits on defendant's property, or conferred no benefits equal to the amount of this claim, then said charge is excessive and unlawful, and plaintiff is not entitled to recover for the same."

"*Answer.* I affirm this point, with the exception that I instruct you that [if you believe from the evidence that the property in question, or the neighborhood of which it was a part, required or justified the work, or that the work was justified or required to be done for the benefit of defendant's land as city lots and as a portion of the city at large] and that the work was not done for general public benefit, then it is not necessary for the plaintiff to show that the amount of the special benefits to the defendant's property was equal to the amount of the claim."

"Fifth. The city, by its assessment, having given the land in question a rural or surburban rating, it is estopped from denying its rural character."

"*Answer.* [I decline to affirm this.]"

The court charged, *inter alia,* as follows:

"It is an ordinary rule of the city that the owners of real estate shall pay for paving in front of it according to the number of feet frontage.

"Within a few years, however, it has been settled by repeated decisions of the supreme court that this method of taxation is not constitutional when applied to properties which are rural or suburban, as distinguished from those which would in the ordinary sense of the term be called city properties.

"This ruling of our highest court must be our guide in this case. It is undoubtedly true that the plaintiffs here, the contractors, establish a prima facie case by exhibiting the claim filed and the authority under which they did the work.

"The effect of this in this case is to throw upon the defendant the burden of establishing that the property against which the claim was filed was exceptional; that is, that though it was situated within the limits of the city, it was not subject to the claim, because it was rural or suburban in the sense to which I

have referred, and therefore protected from taxation by the feet frontage rule. The defense here relies upon this ground of contention. [To substantiate it, it is incumbent upon the defendant to satisfy you by evidence that his property, to which the claim filed relates, was not city property in the ordinary meaning of that term; that it was not property already so far improved or in the midst of or in such close proximity to city improvements that it could fairly be said that the paving was requisite for the benefit of that property as a part of the city proper.] Substantially this test is what I understand the supreme court to have laid down. [The fact that some persons or many would use the term rural in connection with a given property, would not settle the question in favor of an exemption from such a tax as is levied in this case.

"Some might describe all West Philadelphia as rural. What you are to consider is the nature of the benefit done by the work in question.] If this work had principally a general advantage, and was not demanded by the wants and interests and for the special benefit of the immediate vicinity of the defendant's property, and of that property as a part of the city proper, then your verdict should be for the defendant. Otherwise your verdict should be for the plaintiffs for the amount claimed."

The verdict was for the plaintiffs for the full amount claimed, $742.25, and judgment was entered accordingly; whereupon, the defendant took this writ and assigned as error the portions of answers and charge included in brackets, and also that the court erred in not instructing the jury that the completely rural character of the neighborhood protected the land from the frontage rule.

*Joseph Leedom,* for plaintiff in error.—Assessments according to the frontage rule are justified only where they provide a just and equal apportionment according to the benefits conferred, and do not impose unfair and unequal burdens, and are practically applied only to cities and large towns when the density of population along the street and the small size of lots make it a reasonably certain mode of arriving at a true result. *Re* Washington Ave. 69 Pa. 361, 8 Am. Rep. 255.

The facts established at the trial, together with its rural assessment, determined the rural character of the land and the rural character of the neighborhood, and protected defendant's lot from the frontage rule of taxation. Philadelphia use of Johnson v. Rule, 93 Pa. 18; Hammett v. Philadelphia, 65 Pa. 146, 3 Am. Rep. 615; Seely v. Pittsburgh, 82 Pa. 360, 22 Am. Rep. 760.

The case of Craig v. Philadelphia, 89 Pa. 265, practically decided the question raised in this case as to the rural character of the neighborhood of defendant's lot. The lot involved in Craig v. Philadelphia was situated at Forty-Ninth and Market streets, on one of the main thoroughfares and on the line of the principal travel. The lot involved in this case is on Forty-Eighth street, north of Haverford avenue. Forty-Eighth street, in 1878, when this paving was done, was not even opened for public travel north of Westminster avenue. It is in an isolated neighborhood out of the line of travel. The close proximity of defendant's lot to that involved in Craig v. Philadelphia, brings this case directly under the rulings in that case.

It is not incumbent on the defendant to satisfy the jury "that his property is not in close proximity to city improvements," as ruled in the court below.

No paper book filed for defendant in error.

PER CURIAM:

This judgment is affirmed by a divided court.